IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

GERALD A. FAST, TALISHA CHESHIRE )
and BRADY GEHRLING on behalf of )
themselves and as class representatives for )
all others similarly situated, )
)
        Plaintiffs, )
)
    v. )   Case No. 06-4146-CV-C-NKL
)
APPLEBEE'S INTERNATIONAL, INC. )
d/b/a APPLEBEE'S NEIGHBORHOOD )
GRILL & BAR, )
)
       Defendant. )

**ORDER**

Plaintiff Gerald A. Fast has filed a two count complaint against Applebee's

International, Inc. ("Applebee's"), alleging that Applebee's violated provisions of the Fair

Labor Standards Act ("FLSA") by not paying him at least the hourly minimum wage for

his non-tipped work or for work he did that was not incidental to his duties as a tipped

employee.  Fast also claims that Applebee's violated the FLSA by not paying him for the

entire time that he was at work.

Pending before the Court are Fast's Motion for Leave to File Second Amended

Complaint [Doc. # 44] and Applebee's Motion for Summary Judgment [Doc. # 29].  Also

pending before the Court is Fast's Alternative Rule 56(f) Motion for Additional Time to

1

Conduct Discovery to fully and completely respond to Applebee's Motion for Summary Judgment [Doc. # 40].

## Plaintiff's Motion for Leave to File Second Amended Complaint

Pursuant to the Court's September 14, 2006 Scheduling and Jury Trial Order [Doc. # 20], any motion to amend the pleadings must be filed on or before February 2, 2007. On February 2, 2007, Plaintiff filed his Second Amended Complaint [Doc. # 37], which added Plaintiffs Cheshire and Gehrling and modified and added to the allegations contained in Plaintiff Gerald Fast's First Amended Complaint. Six days later, Fast filed a Motion for Leave to File Second Amended Complaint [Doc. # 44]. Fast represents, and Applebee's does not dispute, that Applebee's "was well aware that an additional amended complaint was contemplated and intended in that counsel for Defendant specifically inquired about an additional amended complaint when counsel for the Defendant and counsel for the Plaintiffs discussed an extension of time for Plaintiff, Gerald A. Fast, to respond to Defendant's Motion for Summary Judgment." (Doc. # 44, ¶ 3). The Court finds that the delay in filing Plaintiff's Motion for Leave to File a Second Amended Complaint was de minimis and Applebee's is not prejudiced by the amendment. Therefore, Plaintiff's Motion for Leave to File Second Amended Complaint is granted.

## Applebee's Motion for Summary Judgment

Applebee's has moved for summary judgment as to Plaintiff Gerald Fast's claims. For the reasons stated herein, Applebee's motion is granted in part and denied in part.

2

## I.    Facts[1]

Fast was employed at Applebee's restaurants in Columbia and Jefferson City, Missouri, from May 1998 through May 2001.  Since March 2002, Fast has been employed at the Applebee's restaurant in Columbia, Missouri.

Fast has performed a number of different functions at the restaurants.  Fast was a cook and server at the Jefferson City restaurant from May 1998 to August 1999 and at the Columbia restaurant from August 1999 to February 2000.  From February 2000 to May 2001, he was a server, bartender and cook at the Jefferson City restaurant.  Finally, from March 2002 to the present, Fast has been employed as a server, bartender, host and expediter at the Columbia restaurant.  Fast has worked almost exclusively as a bartender since May 23, 2005.

Prior to May 23, 2005, the Columbia restaurant was owned by Ozark Apples, Inc. ("Ozark"), which is an Applebee's franchisee.  After May 23, 2005, the Columbia restaurant was owned by Gourmet Systems, Inc. ("GSI"), an Applebee's subsidiary.

### A.    Fast's Tipped Work Claim

When Fast works as a bartender, he earns $4.75 per hour plus at least $30 per month in tips.  His overall compensation exceeds the minimum wage.

In addition to serving customers during his bartending shift, Fast is expected to perform certain pre- and post-shift duties including keeping the bar area clean and stocked.  Fast is unable to earn tips while performing these duties.

---

[1] The facts are viewed in the light most favorable to the non movant.

3

In addition to traditional bartending duties, Fast is required to perform other duties during his bartending shift. These other duties include the following:

> stock the bar with garnishments and alcohol, manage the money drawer, clean up restaurant area by picking up napkins and straightening chairs, mop the floor, clean the blender, clean the drink machine, clean the [bar's] dishwasher, clean the drink station, clean alcohol bottles and the bottle rack, stock the straw caddies, take inventory and stock the bar, cut fruit and stock, clean the beer cooler, work on the drain pipe of the hand sink, answer phone, take out mats and the trash, and fix machines.

(Sugg. in Opp. at 27) (citations omitted).

On several occasions, these duties accounted for more than 20 percent of Fast's bartending time.

### B. Fast's Appletime Claim

While Ozark owned the Columbia restaurant, employees were expected to report to work 15 minutes prior to their scheduled shift. This process of arriving 15 minutes early was known at Ozark as "Appletime" and was included in the Ozark employee handbook. Applebee's approved Ozark's Appletime policy. In fact, Ozark needed approval from Applebee's before its employee handbook could be printed. When GSI took over the Columbia restaurant in May 2005, an Applebee's representative told the employees that all policies would remain the same and that the only thing that would change was the name of the entity paying the employees.

When Fast arrives at work he usually does a visual assessment of the restaurant, which may then lead to picking up trash or straightening chairs prior to his clocking in. Fast testified that from January 1 to May 1, 2005, he usually arrived at work early, but

4

that he usually clocked in "right away." (Fast Depo. at 56). In addition, Fast testified as

follows:

> Q:     A little earlier you described for us your routine when you
> arrived at work prior to May 1 of 2005. Could you
> describe for us now your routine when you arrive at work
> today?
>
> A:     My routine is the same today as it was [prior to May 1,
> 2005]. I walk in the door. I check to see how things are.
> I just do a visual summary of the restaurant to see if things
> need to be straightened up. I straighten up chairs on my
> way back to my area. I pick up trash. I would generally
> then clock in at that time. . . .
>
> Q:     How much time passes from the moment you walk in the
> door to the moment you clock in?
>
> A:     That varies.
>
> Q:     From what to what?
>
> A:     I mean if I just walk straight into the door and just go
> straight back to the computer probably 30 seconds to a
> minute but if there – if there are regular customers that I
> see somewhere, then I will stop and talk to them. If
> there's trash I have to pick up[,] I pick it up. If there's
> people at the door that need to be sat when I walk in the
> door, I will go ahead and take care of them right away. So
> that's kind of some of the ways it varies. . . .
>
> Q:     Did anyone at any time at an Applebee's restaurant tell
> you that you should start working before you clocked in?
>
> A:     No.
> . . . . . . .
>
> Q:     Would it be fair to say that on a typical day you're clocked
> in within a couple of minutes of when you arrive?
>
> A:     Yes.

(Fast Depo. at 98-100).

In May 2005, GSI changed the computer system used to account for employee time. Under the new system, an employee must have managerial approval in order to clock in before the start of his shift. Alternatively, the employee may choose the "clock in as scheduled" option. If the employee chooses that option, then the computer reminds the employee not to start working until his scheduled shift time begins. Once the shift begins, the computer automatically clocks in the employee. If an employee is not clocked in, then he is unable to operate the restaurant's computer system. In other words, unless the employee is clocked in, he cannot enter an order or complete a transaction. But, if the employee has chosen the "clock in as scheduled" option, then the computer allows the employee to enter orders and complete transactions even if the employee's shift has yet to begin. Fast testified that, since May 1, 2005, he is usually clocked in within a couple of minutes of when he arrives at the restaurant. However, on more than one occasion, Fast chose the "clock in as scheduled" option and then worked without pay until his shift began. On other occasions, Fast clocked in early with a manager's approval. Fast testified that in December 2005, a manager instructed all employees that if they arrive to work early, they should have a manager clock them in immediately.

Applebee's time records dating from May 23, 2005 to September 18, 2006, indicate that Fast clocked in at his scheduled start time 34 percent of the time, which means that Fast either clocked in at exactly his scheduled start time or he chose the "clock in as scheduled" option. During the same period, Fast clocked in after his scheduled start

time 51 percent of the time and clocked in before his scheduled start time with manager approval 15 percent of the time.

## II.     Discussion

Fast raises two claims in his Second Amended Complaint.  In Count I, Fast claims that Applebee's violated the FLSA by not paying him at least the hourly minimum wage for his non-tipped work or for work he did that was not incidental to his duties as a tipped employee.  In Count II, Fast claims that Applebee's violated the FLSA by not paying him for the entire time that he was at work.  Specifically, Fast claims that he was expected to arrive early, but was not paid until his shift started.

### A.     Fast's Tipped Employee Claim

Applebee's employees must receive at least the $5.15 per hour minimum wage.  29 U.S.C. § 206(a)(1).  But, if an employee routinely earns more than $30 in tips each month, then he is a "tipped employee," and his tips are calculated into the hourly wage paid by the employer.  29 U.S.C. § 203(m); 29 U.S.C. § 203(t); 29 C.F.R. § 531.51. Thus, Applebee's is only required to directly pay a fraction of the minimum wage ($2.13 per hour) to a tipped employee, so long as the employee's wages and tips together equal at least the minimum wage.  29 U.S.C. § 203(m).

The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a "tip credit."  *See generally* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59.  Applebee's may

only take a tip credit "for hours worked by [an] employee in an occupation in which he qualifies as a 'tipped employee.'" 29 C.F.R. § 531.59.

Fast concedes that, as a bartender, he is a tipped employee. Also undisputed is the fact that Fast received direct compensation in excess of $2.13 per hour for the hours he worked as a bartender and that his overall compensation exceeded the minimum wage. Fast, however, claims that he should have received direct compensation equal to minimum wage for the time he spent performing duties that were unrelated to his tip producing bartending duties. In addition, Fast claims that he should have received direct compensation equal to minimum wage for the time he spent performing duties that were incidental to his tip producing bartending duties because the incidental duties required greater than 20 percent of his time.

A tipped employee's status does not change simply because the employee is required to perform non-tip producing duties related to his job. 29 C.F.R. § 531.56(e). Regulation 531.56(e) describes the difference between an employee working dual jobs, only one of which is tipped, and a tipped employee required to perform some non-tip producing duties:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least [$30] a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing

8

dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

The United States Department of Labor's Field Operations Handbook ("Handbook") attempts to clarify 29 C.F.R. § 531.56(e). Though not binding on the Court, the Handbook is a persuasive authority. *Myers v. The Copper Cellar Corporation*, 192 F.3d 546, 554 (6th Cir. 1999). It states as follows:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

(Handbook § 30d00(e) (Dec. 9, 1988).)

Thus, FLSA regulations and the Handbook indicate that a tipped employee's duties must fall into one of three categories. The first category includes all tip producing duties. An employer may take the tip credit for any employee time that falls within the first category. If an employee's duty is not tip producing, then it must be incidental to one of the employee's tip producing duties (the second category), or it must be a duty that

9

is unrelated to any of the employee's tip producing duties (the third category). If the duty falls within the second category, then the employer may take the tip credit for the time the employee spent on incidental duties so long as the incidental duties do not exceed 20 percent of the employee's overall duties. If the employee's second category duties exceed 20 percent of the employee's overall duties, then the employer may not take the tip credit for any of the employee's time spent on second category duties. Finally, an employer may not take the tip credit for any employee time that falls within the third category because third category duties are treated as separate and distinct occupations.

Fast argues that, in addition to his tip producing bartending duties, he performed duties that were neither tip producing nor incidental to his tipped employment as a bartender. Therefore, Fast believes he should have been paid full minimum wage directly from Applebee's for the time he spent on the following duties:

> stock the bar with garnishments and alcohol, manage the money drawer, clean up restaurant area by picking up napkins and straightening chairs, mop the floor, clean the blender, clean the drink machine, clean the [bar's] dishwasher, clean the drink station, clean alcohol bottles and the bottle rack, stock the straw caddies, take inventory and stock the bar, cut fruit and stock, clean the beer cooler, work on the drain pipe of the hand sink, answer phone, take out mats and the trash, and fix machines.

(Sugg. in Opp. at 27) (citations omitted). Alternatively, Fast argues for the same relief on the ground that the duties described above are incidental to his tip producing duties and exceed 20 percent of his time.

On the other hand, Applebee's advocates a restrictive interpretation of the applicable FLSA regulations. According to Applebee's, Fast's claim fails because he

10

meets the statutory definition of a tipped employee and because each of the duties described above falls within a bartender's job description.[2] (Reply at 8, 10). The issue . . . is not whether Fast performed 'non-tipped' work, because the regulation plainly states 'related duties in an occupation need not by themselves be directed toward producing tips.' Rather, the question is whether the work in question was part of an occupation for which the employee received tips." (Reply at 12 (emphasis omitted).) Thus, Applebee's argues that it should be allowed to take a tip credit for all of Fast's time so long as all of Fast's duties were incidental to his tip producing duties. Applebee's argues that it may take the tip credit for any hours Fast worked as a bartender regardless of how much of Fast's time was spent performing non-tip producing bartending duties.

Applebee's contends that an occupation-based analysis is the only appropriate analysis, and that the Handbook supports this conclusion. The Court disagrees. Applebee's argues that the Handbook's 20 percent limit on "general preparation work or maintenance" should "be construed to mean tasks that are not part of the regular duties of the 'tipped employee' occupation, but instead are general tasks performed as part of a distinct, non-tipped occupation." (Reply at 12 (emphasis omitted).) Applebee's interpretation, however, would render the Handbook's 20 percent limit superfluous. It is well established that an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation. 29 C.F.R. § 531.56(e). Thus, the amount of

---

[2]Applebee's has submitted evidence that a bartender's core duties include: "balance cash receipts; clean glasses, utensils, and bar equipment; clean bars, work areas, and tables; order or requisition liquors and supplies; slice and pit fruit for garnishing drinks; and arrange bottles and glasses to make attractive displays." (Reply, Ex. 2.)

11

time an employee spends in a non-tipped occupation is irrelevant to the question of whether the employer may take a tip credit for that time. Therefore, the Handbook's phrase "general preparation work or maintenance" must refer to work that is incidental to an employee's tip producing duty. Otherwise, the 20 percent limit would be meaningless.

Applebee's also argues that case law–*Dole v. Bishop*, 740 F.Supp. 1221 (S.D. Miss. 1990); *Hodgson v. Frisch's Dixie, Inc.*, 1971 WL 837 (W.D. Ky. 1971); *Myers v. The Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999); and *Townsend v. B.G.-Meridian, Inc.*, 2005 WL 2978899 (W.D. Okla. 2005)–supports its occupation-based analysis. Again, the Court disagrees.

In *Dole*, the court, after a bench trial, found that certain cleaning and food preparation duties performed by waitresses before the restaurant opened were not incidental to the waitresses' tipped duties. 740 F.Supp. at 1228. Because the *Dole* court held that the waitresses' pre-opening duties were not incidental to their tipped duties, it had no reason to address the Handbook's 20 percent limit on incidental duties. Similarly, the *Hodgson* court, after a bench trial, found as a matter of fact that "waitresses and carhops were frequently required to work in 'non-tipped' occupations." 1971 WL 837, *3. The *Hodgson* court, without addressing duties incidental to tip producing duties, held that the defendant employer could not take a tip credit for the hours waitresses and carhops spent in non-tipped occupations during their shifts. *Id.* at *5. Therefore, neither *Dole* nor *Hodgson* provide support for Applebee's argument.

12

In *Myers*, the defendant employer required its wait staff to prepare a house salad for each of the staff member's patrons. During peak times, management would designate one member of the wait staff to prepare house salads for all patrons in the restaurant. This salad preparer designation precluded the individual from personal contact with diners and prevented the individual from receiving customer gratuities. 192 F.3d at 548. The *Myers* court held that, under these circumstances, the salad preparer could not be considered a tipped employee. *Id*. at 550. The *Myers* court did not address the applicability of the Handbook's 20 percent limit and provides no support for Applebee's argument.

Finally, in *Townsend*, the plaintiff waitress argued that her employer could not take the tip credit for those times when she performed non-tip producing duties, such as operating the cash register and taking telephone orders. The court disagreed with the plaintiff and held that her activities were incidental to her tip producing waitress duties. 2005 WL 2978899, *7. The court did not address what percentage of the plaintiff's time was consumed by incidental duties or the applicability of the Handbook's 20 percent limit. Accordingly, *Townsend* provides no support for Applebee's argument.

To resolve this claim, the Court must first determine which of Fast's bartending duties were tip producing, and then, which, if any, of Fast's duties are incidental to his tip producing duties. According to 29 C.F.R. § 531.52, a "tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." Which of a bartender's duties may prompt a customer to tip is a question of fact upon which

13

reasonable finders of fact could disagree. (Handbook § 30d00(e)). Without knowing which of Fast's duties are tip producing, the Court cannot conduct the subsequent analysis as to which, if any, of Fast's duties are incidental to his tip producing duties and how much time Fast spent on incidental duties. Because these factual matters are material and in dispute, summary judgment is denied as to Count I.

**B.  Fast's Appletime Claim**

In his Second Amended Complaint, Fast claims that "because of training, encouragement, and/or environment [he] arrived at work prior to the beginning of [his] paid shift and/or began work off the clock without being compensated for said time." (Second Amended Complaint, ¶ 58.)  This pre-shift time was commonly known as "Appletime."

An employer is obligated to compensate employees for work it knows the employees are performing.  29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.").  Furthermore, it is the employer's responsibility "to see that work is not performed if it does not want it to be performed." *United States Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995).

Applebee's argues that it should not be held liable for any violations that occurred prior to May 23, 2005–the date when Applebee's International, Inc.'s subsidiary, GSI, assumed control of the restaurant.  According to Applebee's, prior to May 23, 2005, the restaurant was owned and controlled by Ozark, its franchisee.  A franchisor is not ordinarily liable for the actions of its franchisee. *Howell v. Chick-Fil-A, Inc.*, 1993 WL

603296, *2 (N.D. Fla. 1993). But, a franchisor may be held liable for the actions of its franchisee if the actual relationship between them is that of principal and agent. *Miles v. Century 21 Real Estate LLC*, 2007 WL 92795, *3 (E.D. Ark. 2007). Applebee's has submitted no evidence detailing its relationship to Ozark. On the other hand, Fast has submitted an affidavit from Mike Donnelly, a former Applebee's Area Director, in which Donnelly swears that Applebee's approved the printing of the Ozark employee handbook before Ozark was allowed to have the manual printed. At this early stage of discovery, Applebee's relationship with Ozark remains a disputed issue of fact.

Applebee's also argues that summary judgment should be granted on Fast's Appletime claim because Fast's "deposition testimony establishes that he was not required to work without compensation, and that he did not work without compensation." (Reply at 1.) Fast contends that he was required to report to work 15 minutes prior to his scheduled shift time and that he was not compensated for this pre-shift time. At his deposition, Fast testified that, since GSI began operating the Columbia restaurant, he had not seen anything in writing that states that employees are expected to be at work 15 minutes early. Furthermore, Fast was also unable to testify that a GSI manager instructed him to arrive to work before his scheduled shift time. It is undisputed, however, that Ozark required its employees to arrive at work 15 minutes prior to the beginning of their scheduled shift time. And, after GSI acquired the Columbia restaurant, an Applebee's representative told Fast and the other Ozark employees that the only thing that would change about their employment was who would be paying the employees. The

Applebee's representative indicated that everything else, including Ozark's policies, would stay the same.

Fast's argument that he was required to report to work early is supported by the fact that GSI's computerized clock-in system only allows employees to clock in early with a manager's approval, but allows an employee to "clock in as scheduled" and then work prior to the start of the employee's paid shift. Although an employee opting to "clock in as scheduled" is instructed by the computer not to work until the employee's scheduled shift time, the intent of any such directive is called into question by the fact that an employee, after choosing the "clock in as scheduled" option, is allowed to enter customer orders and complete transactions. By way of contrast, an employee who has not clocked in is prevented by the computer from entering customer orders or completing transactions.

An employer "cannot sit back and accept the benefits [of an employee's labor] without compensating for them." *Cole Enterprises*, 62 F.3d at 779-780 (quoting 29 C.F.R. § 785.13). Whether Applebee's required or allowed Fast to work off the clock is a disputed issue of material fact.

Applebee's argues that even if Fast was required to work off the clock, summary judgment should be granted on Count II because Fast cannot establish that he has performed any work off the clock.

16

Fast claims two categories of uncompensated time: (1) the time between when he walks in the door of the restaurant and when he clocks in, and (2) the time he spends working prior to his shift beginning but after choosing the "clock in as scheduled" option.

With respect to the first category of uncompensated time, Fast described his pre-clock in routine as follows: "I walk in the door. I check to see how things are. I just do a visual summary of the restaurant to see if things need to be straightened up. I straighten up chairs on my way back to my area. I pick up trash. I would generally then clock in at that time." (Fast Depo. at 98.) Fast also testified that on a typical day he is clocked in within a couple of minutes of arriving at the restaurant. As to the second category of uncompensated time, Fast submitted evidence that on more than one occasion he has opted to "clock in as scheduled," but has then worked on Applebee's behalf as evidenced by computer transactions showing that he entered customer orders prior to the beginning of his scheduled shift. Accordingly, Fast has submitted evidence that he worked without compensation.

Applebee's argues that, even if Fast did work off the clock, Fast should not be compensated because any such work is de minimis. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded."). In determining whether Fast's uncompensated work is de minimis, the Court assesses "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Bobo v.*

17

*United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)).

The Court finds that Fast's first category of uncompensated time is de minimis. The practical difficulty of recording the amount of time Fast spends each day straightening chairs or picking up trash between the time he walks in the door and the time he clocks in is substantial. And, though Fast regularly performs this work, he testified that on a typical day he is clocked in within a couple of minutes of arriving at the restaurant. Accordingly, the aggregate amount of compensable time is low. Because the aggregate amount of time is low and the practical difficulty of recording the time is immense, Fast's first category of time worked is de minimis and need not be compensated. Therefore, Applebee's Motion for Summary Judgment is granted as to the amount of time between when Fast arrives at the restaurant and clocks in.

Fast's second category of uncompensated time–the time between when he chooses the "clock in as scheduled" option and the beginning of his scheduled shift–is not de minimis and should be compensated. Pursuant to 29 U.S.C. § 211(c), Applebee's is required to make and keep records of employees' wages and hours. In this case, Applebee's allowed Fast to clock in by choosing the "clock in as scheduled" option on the computer. By making this choice, Fast was able to input customers' orders and complete transactions even though he was not being paid by Applebee's at that time. In contrast, if Fast were not clocked in, the computer would not allow him to input orders or complete transactions. Although the computer informs any employee choosing the "clock

18

in as scheduled" option that he or she should not work until his or her shift time, the simple fact that the computer allows the employee to work necessitates an inference that it is expected that employees will work between the time they clock in and the time their shift begins. Fast testified that he has worked while off the clock but after choosing the "clock in as scheduled" option on more than one occasion, which Fast claims is evidenced by the fact that he entered orders on the computer prior to the beginning of his compensated shift time. The Court is unable to conclude that Fast performed such work regularly or that the aggregate amount of time worked was high. But, even if the amount of time is small, it could easily be measured by recording when Fast enters orders on the computer and, if such orders were entered while Fast is off the clock, compensating Fast for that time. Alternatively, Applebee's could simply eliminate the "clock in as scheduled" option from its computer system and treat employees as having clocked in whenever they arrive at the restaurant and begin working. Thus, the Court finds that the time Fast worked between clocking in as scheduled and the beginning of his paid shift was not de minimis.

Finally, Applebee's argues that even if Fast did perform work off the clock, Fast has submitted no evidence that Applebee's knew that Fast was working off the clock.[3] In this case, the finder of fact could conclude that Applebee's had actual or constructive knowledge that Fast was working off the clock because Fast, on more than one occasion, entered customer orders prior to the beginning of his paid shift. Therefore, Applebee's

---

[3] Applebee's concedes that "an employer generally has an obligation to compensate employees for work that it knows employees are performing." (Reply at 4.)

Motion for Summary Judgment is denied as to Fast's claim that he worked without compensation between the time he chose the "clock in as scheduled" option and the time his paid shift began.

## III.    Fast's Motion for Additional Time to Conduct Discovery

Fast filed an Alternative Rule 56(f) Motion for Additional Time to Conduct Discovery to fully and completely respond to Defendant's Motion for Summary Judgment [Doc. # 40]. In his suggestions in support, Fast indicates that his motion for additional time is submitted as an alternative to the Court denying Applebee's summary judgment motion.

The Court denied Applebee's summary judgment motion in every respect except as to Fast's claim that he should be compensated for the time between when he first arrives at the restaurant and when he clocks in. The Court's decision to grant Applebee's summary judgment on that aspect of Fast's claim is based on Fast's own testimony that the time between when he arrives and when he clocks in is typically only a couple of minutes. (Fast Depo. at 100.) Additional discovery cannot refute Fast's own testimony.

Therefore, Fast's Motion for Additional Time is denied.

## IV.    Conclusion

Accordingly, it is hereby ordered that

(1)    Fast's Motion for Leave to File Second Amended Complaint [Doc. # 44] is

GRANTED;

(2)     Applebee's Motion for Summary Judgment [Doc. # 29] is GRANTED IN

PART and DENIED IN PART.  The motion is GRANTED as to Fast's

claim that he should be compensated for the time between when he first

arrives at the restaurant and when he clocks in.  The motion is DENIED in

all other respects; and

(3)     Fast's Alternative Rule 56(f) Motion for Additional Time to Conduct

Discovery to fully and completely respond to Defendant's Motion for

Summary Judgment [Doc. # 40] is DENIED.


 s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated:   May 3, 2007
Jefferson City, Missouri