IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GERALD A. FAST, TALISHA CHESHIRE and BRADY GEHRLING on behalf of themselves and as class representatives for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLEBEE'S INTERNATIONAL, INC. d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR,<br><br>Defendant. | Case No. 06-4146-CV-C-NKL |

**ORDER**

Pending before the Court is Plaintiffs Gerald A. Fast, Talisha Cheshire and Brady Gehrling's Motion for Conditional Class Certification and Approval of Notice to Putative Class Members [Doc. # 45]. In their Motion, Plaintiffs ask the Court to conditionally certify two classes. Plaintiffs describe the first class (hereinafter, "Tipped Employee" class) as "a class of all persons formerly and/or presently employed by Defendant Applebee's International, Inc. and its subsidiaries as a tipped employee, specifically servers and bartenders, during the notice period," and the second class (hereinafter, "Appletime" class) as "a class of all persons formerly and/or presently employed by Applebee's as an hourly employee . . . during the notice period." (Doc. 45 at 1). Plaintiffs also ask the Court to approve the mailing and electronic publishing of notice to

1

all putative class members for both classes, and to require Applebee's to produce a list of all potential class members, including their mailing address, telephone number, e-mail address and job title in Microsoft Excel spreadsheet format. (Doc. 45 at 1).

In their Reply to Defendant Applebee's International, Inc.'s ("Applebees") Suggestions in Opposition to Plaintiff's Motion, Plaintiffs indicate that they no longer wish to pursue certification of the Appletime class. (Doc. 69 at 1). Instead, Plaintiffs ask the Court

> only to conditionally certify a class of current and former servers and bartenders at 'corporate' restaurants (i.e. those operated by defendant or its subsidiaries as opposed to franchisees) during the statutory period who were/are directed or permitted to perform duties that would not generate tips such as general maintenance and preparatory work in excess of twenty percent (20%) of their shift without paying them at least minimum wage for such work.

(Doc. 69 at 1-2).

For the reasons stated herein, Plaintiffs' Motion, as amended by their Reply, is granted in part.

## I. Facts

The named plaintiffs are individuals who have worked as servers, bartenders and hourly employees at an Applebee's restaurant. Plaintiffs Fast and Gehrling are currently employed by Applebees in Columbia, Missouri. Plaintiff Cheshire was employed by Applebees in Jefferson City, Missouri from November 22, 2004 through January 23, 2007. Each plaintiff submitted an affidavit in which he or she testified that non-tipped work accounted for more than 20% of his or her total shift.

2

Each restaurant typically develops its own list of tipped employees' duties that are to be performed throughout the day. And, tipped employees' schedules vary depending on each restaurant's expected needs. Notwithstanding each restaurant's freedom to schedule their employee's duties, an Applebees document titled "Labor Management Best Demonstrated Practices" states that

> BOH [Back of the house, or non-tipped employees] savings are possible
> by utilizing FOH [Front of the House, or tipped employees] Associates
> to complete some or all of the following:
>    - Servers portion prep items during slow times.
>    - All FOH Associates can act as [General Utility, or dishwasher]
>      for slow shifts.
>    - All FOH Associates can act as the Expo during slow times.
> Leave notes in the Managers log of possible cleaning duties that can be
> performed during slow times. These predetermined activities are to be
> assigned to insure that during slow times Associates are still productive.

(Doc. 50, Ex. 2). Each of these activities–preparing prep items, dishwashing, acting as Expo and cleaning–could be considered non-tip producing activities.

A May 2005 to August 2005 investigation by the Department of Labor ("DOL") determined that eighteen employees working at an Applebee's restaurant in Osage Beach were owed $1,892.84 in back wages as a result of working in excess of the 20% limit for tipped employees. In addition, a May 2005 to December 2005 DOL investigation of an Applebee's restaurant in Jefferson City found 264 instances where tipped employees were not paid minimum wage for non-tip producing activity, or where employees were working but not being paid for their time at all.

Ronda Burry, a corporate manager of an Applebee's restaurant in Columbia, identified a Core Manual made available to her by Applebees. The manual describes a

number of tasks that may be performed by servers and bartenders.  Burry testified that, at her restaurant, bartenders perform general maintenance or preparatory work identified in the manual as tasks appropriate for their position.  These tasks include: complete opening checklist, checking in with manager, prepare a bucket or spray bottle with sanitary solution, wipe down bar and bar chairs, get stock from the cooler, wash fruit and fill baskets, cut and fill fruit trays, restock mixes and juices, check glassware for cleanliness, fill salt rimmer, receive and count money drawer, complete shift change checklist, empty garbage cans, clean various parts of the bar, roll silverware, restock silverware bins, organize the bar and answer the telephone.

Similarly, Burry testified that, at her restaurant, severs perform general maintenance or preparatory work identified in the manual as appropriate tasks for servers.  These tasks include: roll silverware; dump ice; fill drip cups in the salad cooler; clean floors; clean tables; clean counters; clean tea urn; follow opening checklist; prepare a bucket or spray bottle with sanitary solution; perform 10-point station check; dust and clean artifacts, pictures and blinds; stock side station; set up server, Expo and beverage station; stock, rotate and prep items for reach-in cooler and Expo line; clean Tiffany lights; clean beadboards; clean wood surfaces; answer telephone; and clean soda dispenser.

**II.  Discussion**

    **A.  Class Certification**

4

Section 216(b) of the Fair Labor Standards Act provides that an employee may bring an action for himself and other employees "similarly situated." 29 U.S.C. § 216(b). A 216(b) collective action differs significantly from Fed. R. Civ. P. 23 class actions. A primary difference between the two is that, under § 216(b), a similarly situated employee must "opt-in" to the collective action to be bound by the proceeding's outcome whereas, under Rule 23, a similarly situated plaintiff must "opt-out" to avoid being similarly bound. 29 U.S.C. § 216(b); Fed. R. Civ. P. 23.

Federal courts have used varying standards to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b). *Davis v. Novastar Mortgage, Inc.*, 408 F. Supp.2d 811, 815 (W.D. Mo. 2005). Though the Eighth Circuit Court of Appeals has not indicated which standard should be used, a majority of the district courts in the Eighth Circuit use the two-step analysis adopted in *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995). *See, e.g., Davis*, 408 F. Supp.2d 811; *Kalish v. High Tech Institute, Inc.*, 2005 WL 1073645 (D. Minn. 2005); *Dietrich v. Liberty Square L.L.C.*, 230 F.R.D. 574 (N.D. Iowa 2005); *McQuay v. American Int'l Group, Inc.*, 2002 WL 31475212 (E.D. Ark. 2002).

Under this two-step process, the plaintiff first moves for class certification for notice purposes. The plaintiff's motion for certification is typically filed at an early stage of the litigation thus requiring a lenient evaluation standard and typically resulting in conditional certification of a representative class. *Mooney*, 54 F.3d at 1213-14; *Grayson v. K Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated"

5

standard is considerably less stringent than Rule 23(b)(3) class action standards). At this early stage of litigation, the Court does not reach the merits of the plaintiff's claims. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citation omitted). Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to "opt-in." *Mooney*, 54 F.3d at 1214.

At the second step of the process, the defendant may move to decertify the class. This is typically done after the close of discovery when the Court has much more information and is able to make a more informed decision. *Id*.

In some cases, the Court will skip the "notice" step and move directly to a second-step evaluation of Plaintiffs' Motion for Class Certification. *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *3 (C.D. Cal. 2004) (court proceeded directly to the second stage of certification where parties did not dispute that discovery had been undertaken); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 498 (D. N.J. 2000) (applying a stricter standard where discovery had been completed).

In the instant case, the parties have conducted some discovery, but neither party contends that discovery is substantially complete. Because discovery is not substantially complete, the Court finds that Plaintiffs' Motion should be evaluated under the more lenient "notice stage" criteria.

### B. Similarly Situated

The FLSA does not define the term "similarly situated." But, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to

6

demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 306 (S.D.N.Y. 1998); *Davis*, 408 F. Supp.2d at 815 (holding that, at the notice stage, conditional certification "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."). Plaintiffs need not show that members of the conditionally certified class are actually similarly situated. That determination will be made after the close of discovery. *Davis*, 408 F. Supp.2d at 815.

In this case, Plaintiffs assert that the class members are similarly situated because "there is a common plan or practice to utilize servers and bartenders in a non-tipped capacity without paying them the required minimum wage. This is shown through affidavits, corporate memos stating the best demonstrated labor practices are to utilize FOH (Tipped Employees) to perform BOH (non-tipped) duties, as well as the Department of Labor investigative report that found these activities were ongoing at multiple Applebee's restaurants." (Doc. 46 at 11).

An employer may not claim a tip credit for an employee's non-tip producing activities if the tipped employee spends more than 20% of his or her shift on non-tip producing activities. Plaintiffs have submitted sworn affidavits that they often spent more than 20% of their shift performing duties that they believe are not tip-producing. In addition, Plaintiffs have submitted evidence that Applebees recommends using tipped employees to do non-tip-producing duties as a way to achieve "BOH savings." In other

7

words, Applebees encourages its restaurants' managers to use low-wage tipped employees to perform jobs that are not tip-producing as a way to save money. Plaintiffs have also submitted evidence that the Department of Labor concluded that Applebees-owned restaurants in more than one location had failed to pay tipped employees for non-tip producing work that exceeded 20% of their shift.

Applebees argues that its servers and bartenders are not similarly situated because each restaurant's manager schedules its employees and assigns them job duties independently. To be similarly situated, however, class members need not be identically situated. *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997). The "similarly situated" threshold requires only a modest factual showing. *Realite*, 7 F. Supp.2d at 306; *Davis*, 408 F. Supp.2d at 816 (noting that declarations provide appropriate support for conditional certification); *Boyle v. Barber & Sons, Co.*, Case No. 03-0574-CV-W-FJG (W.D. Mo. 2004) (granting conditional certification based on the affidavit of one former employee). In this case, Applebees encourages its restaurant's to save money by using tipped employees in non-tip producing capacities. Furthermore, though each restaurant is different, all bartenders and all servers are subject to Applebee's corporate policies and training, and all perform essentially the same duties, which are described in the Core Manual. Plaintiffs have submitted sufficient evidence to show that Applebees maintains and encourages a practice that results in tipped employees performing non-tip producing tasks for less than minimum wage.

Applebees also argues that conditional certification is inappropriate in this case because plaintiffs' claims are not valid and because the class itself would be unmanageable. Neither argument precludes conditional certification. *Hoffmann*, 982 F. Supp at 262 (holding that, at the notice stage, the court does not reach the merits of plaintiffs' claims) (citation omitted); *Pivonka v. Board of County Commissioners of Johnson County, Kansas*, 2005 WL 1799208, *2 (D. Kan. 2005) (holding that disparate factual and employment settings are reviewed during "second stage" analysis, not during "notice stage").

Therefore, given the lenient notice standard, the Court finds that Plaintiffs have met their burden to show that conditional certification is proper.

### C. Notice to Potential Class Members

FLSA violations are subject to a two-year statute of limitations unless the violation is willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). Applebees argues that notice should be sent only to current employees and former employees who worked within three years of the notice being issued. *Redman v. U.S. West Business Resources, Inc.*, 153 F.3d 691, 695 (8th Cir. 1998) ("An action is commenced under the FLSA when a party files suit. In the case of a collective action under the FLSA, the action is commenced when a party files his or her written consent to become part of the action."). Also see, *Bolton v. Sprint,* 2006 WL 1789142 (D. Kan. 2006) Plaintiffs have not presented any authority to the contrary. Therefore, the class

9

notice shall be sent only to current employees and those past employees who have worked for Applebees within the last three years from the date of this order.

In addition, Plaintiffs are directed to modify the notice form attached to their Motion for Class Certification to include the website, if any, that the class members may use to opt in. The notice should reflect that the class members have 90 days from the date the notice is mailed to respond.

Finally, Plaintiffs request that Applebees be ordered to produce a list of all potential class members including their last known mailing address, telephone number, e-mail address and job title, and that such list be in excel spreadsheet format. Plaintiffs request too much. Applebees are ordered to produce to Plaintiffs a list of all potential class members (i.e., those class members who are current employees of Applebees or have been employees of Applebees in the last three years) including their last known mailing address, telephone numbers and email. The list must be produced within thirty days from the date of this order, in a usable format; Applebees need not convert its list to Plaintiffs' preferred format.

**IV. Conclusion**

Accordingly, it is hereby ordered that

Plaintiffs' Motion for Conditional Class Certification and Approval of Notice to Putative Class Members [Doc. 45], as amended by Plaintiffs' Reply to Defendant's Suggestions in Opposition to Plaintiffs' Motion [Doc. 69] is GRANTED IN PART. The Court conditionally certifies Plaintiffs' Tipped Employee class. Plaintiffs' Notice to

Putative Class Members is approved as provided in this order and Applebees must produce to Plaintiffs a list of all potential class members, including their last known mailing address, telephone numbers and email within 30 days of the date of this order.

    s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated:   June 19, 2007
Jefferson City, Missouri