IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GERALD A. FAST, TALISHA CHESHIRE, and BRADY GEHRLING, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 06-4146-CV-C-NKL ) ) |
| APPLEBEE'S INTERNATIONAL, INC., | ) ) |
| Defendant. | ) |

**ORDER**

Plaintiffs, Gerald A. Fast, Talisha Cheshire, and Brady Gehrling ("Plaintiffs"), bring this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. They allege that Defendant Applebee's International, Inc. ("Applebee's"), has failed to pay its servers and bartenders in compliance with the FLSA. Before the Court is Applebee's Motion to Exclude Expert Testimony in Limine and Pursuant to *Daubert* [Doc. # 233]. For the following reasons, the Motion is DENIED in part and GRANTED in part.

**I.     Factual Background**

Applebee's has moved to exclude the testimony of Plaintiffs' three experts, William Cutler, John Hagar and Michael Crain. Applebee's claims that William Cutler is not qualified as an expert on the topics he opines and that some of his opinions are on matters of law and therefore improper. Because the opinions of Hagar and Crain are derivative from the opinions expressed by Mr. Cutler, Applebee's claims that their opinions must be

stricken as well. In addition, Applebee's seeks to exclude the opinion of Crain because he calculates the Plaintiffs' damages based on state minimum wage laws when an opt-in plaintiff lives in a state where the state minimum wage is higher than the federal minimum wage.

### A. William Cutler

William Cutler worked for the United States Department of Labor ("DOL") for 24 years as a Compliance Officer with the Wage and Hour Division. He then worked for various companies giving FLSA advice. He now has his own consulting firm and has given expert testimony in some cases involving the FLSA. During his tenure at the DOL, he worked on numerous cases involving the compensation of tipped employees. However, he cannot remember a specific case that he worked on. Cutler does not recall any time during his DOL employment when he reviewed or interpreted the twenty percent guideline at issue in this case.

As part of this litigation, Mr. Cutler assisted in preparing a questionnaire which was sent to the opt-in plaintiffs. Other than the introductory section which he wrote and some changes he made to the body of the questionnaire, Mr. Cutler does not know who designed the questionnaire. He does know that the questionnaire used in this case was based on a questionnaire that was used by Applebee's counsel in the early stages of the litigation. Mr. Cutler did make changes to the questionnaire which were consistent with his experience at the DOL.

The questionnaire asked the opt-in plaintiffs to describe their duties during a typical shift. Mr. Cutler eliminated any responses that contained obvious mathematical errors. For example, he would eliminate any response where the total time spent on duties described by the opt-in plaintiff did not add up to the total length of the shift.

While working as a DOL Compliance Officer, Mr. Cutler often used sampling techniques to investigate possible violations of the FLSA. He used these tools to gather information. Mr. Cutler does not recall ever seeing a DOL form designed to gather information with respect to tipped employees, and the Plaintiffs' questionnaire was not based on any DOL template or form. Mr. Cutler admits he is not qualified as a statistician to extrapolate the results of a sample to a larger population. He has no idea what a qualified statistician would do to extrapolate responses from only 30% of the class.

Mr. Cutler is aware of the process used in the distribution of the questionnaire to the opt-in plaintiffs. The actual distribution was done by Epic Systems, Inc. As a safeguard, Epic Systems required a responding opt-in plaintiff to include the last four digits of their social security number to ensure that only opt-in plaintiffs were providing information. However, Mr. Cutler did not remember this process at the time of his deposition.

In the questionnaire sent to the opt-in plaintiffs, Mr. Cutler did not define the term "typical" when asking the opt-in plaintiffs to describe a typical shift. He states that it is a common word which is generally understood to mean average or normal. He relied on

3

the opt-in plaintiffs to do their best to fill in the questionnaire which is the same approach taken by him and other investigators at the DOL. Approximately thirty per cent of the opt-in plaintiffs returned the questionnaire. About ten percent of those responses were excluded because they were obviously incorrect.

### B. Dr. John Hagar

Dr. Hagar is a statistician at the University of Missouri. After Mr. Cutler finished eliminating obvious mathematical errors from the questionnaire responses, Dr. Hagar performed an analysis to determine the mean, median and distribution of the data gathered. He also determined that the data fell within the expected distribution of a bell curve. Finally, he eliminated from his data the top ten percent of responses which showed general preparation and maintenance work in excess of twenty percent. This was to the advantage of Applebee's.

### C. Michael Crain

Michael Crain is an economist who does damage calculations. Using the calculations made by Dr. Hagar, he determined the amount of wages which were due to the Plaintiffs and the opt-in plaintiffs. He took Dr. Hagar's average response calculation and applied it to Plaintiffs' time records. In making this calculation, Mr. Crain used the state minimum wage where the state minimum wage was higher than the federal minimum wage.

## II. Discussion

## A. Federal Rule of Evidence 702

Federal Rule of Evidence 702 provides that expert opinion testimony is permissible if it is based on scientific, technical or other specialized knowledge and will assist the trier of fact. It must be given by a person qualified as an expert based on experience, training or education. The testimony must meet the following three criteria: (1) it must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case.

Federal Rule of Evidence 702 was amended to its current form in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1993). *Daubert* charged trial judges with acting as gatekeepers to exclude unreliable expert testimony. In *Daubert,* the Supreme Court held that expert testimony must be based on a reliable and scientifically valid methodology that fits the facts of the case. 509 U. S. 579 (1993). Among the factors a court should consider in its gatekeeping function to allow or exclude expert testimony are (1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of this methodology; and (4) whether the technique has been generally accepted in the proper scientific community. *Id.* at 593-94. The Supreme Court has subsequently held that the same standards of reliability announced in *Daubert* and codified in the revised Federal Rule of

5

Evidence 702 apply equally to all expert testimony whether based on scientific, technical, or other specialized knowledge. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148, 119 S. Ct. 1167, 143 L. Ed.2d 238 (1999).

The Eighth Circuit has further held that in determining reliability factors, the district court must customize its inquiry to fit the facts of each particular case. *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999). *Also see*, *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006) ("The district court fulfills its role as gatekeeper by screening the proposed evidence and evaluating it in light of the specific circumstances of the case to ensure that it is reliable and sufficiently relevant to assist the jury in resolving the factual disputes."). Moreover, Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. *Lauzon v. Senco Products, Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). The rule clearly is one of admissibility rather than exclusion. *Id.* Case law shows that rejection of expert testimony is the exception rather than the rule. *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1101 (8th Cir.2006).

One of the circumstances of an FLSA case is that exactness is not required because of the difficulty of reconstructing historical data. Thus, a district court must "estimate and fashion a reasonable remedy that restores as fully as possible all the employees covered by the FLSA who were improperly denied compensation . . . ." *Brock v. Tony and Susan Alamo Foundation*, 842 F.2d 1018,1019 (8th Cir. 1988).

### B. William Cutler's Opinions

Applebee's seeks to exclude each of Mr. Cutler's six opinions. The opinions will be addressed individually and sequentially.

#### 1. Opinion One

In his first opinion William Cutler states as follows:

> In my professional opinion and with a reasonable degree of professional certainty I believe that the use of the Opt-In Questionnaire is a valid means through which the duties that are at issue in this lawsuit may be evaluated to determine Applebee's compliance with the FLSA.

Applebee's claims that this opinion should not be permitted because (1) there is no foundation for it; (2) Mr. Cutler has no expertise in surveys; (3) the questionnaire is not based on reliable principles or methods; (4) the questionnaire is not clear and precise; (5) the questionnaire is not framed to be unbiased; and (6) the questionnaire will not assist the trier of facts.

Mr. Cutler worked as a compliance officer with the DOL for 24 years. In his job he was required to interpret, and apply FLSA regulations, labor laws and DOL Handbook provisions. He investigated employers suspected of FLSA violations. Since retiring from the DOL, Mr. Cutler has continued to work with wage and hour law. He states he has done tip credit investigations although he has not done one involving the twenty percent rule that is in dispute in this case. While he does not claim to be an expert on surveys, he has testified that he used similar surveys during his work at DOL to gather information about FLSA violations. He also testified that other Compliance Officers used similar

7

questionnaires to gather historical data. His testimony in this regard is supported by caselaw. *See, e.g., Reich v. Monfort, Inc.,* 144 F.3d 1329 (10th Cir. 1998); *Metzler v. IBP, Inc.*, 127 F.3d 959 (10th Cir. 1997); *Brock v. J.R. Sousa & Sons, Inc.*, 113 F.R.D. 545 (D. Mass. 1986); *Donovan v. Hudson Stations, Inc.*, 1983 WL 2110 (D. Kan. 1983). He also had documents showing the organization of Applebee's and how work was assigned and described. Therefore, his evaluation of the questionnaire was made in context not a vacuum.

The questionnaire used here is not particularly complicated. It asks employees to identify the work they did during a typical shift. While not all parts of the questionnaire are precise, precision is sometimes not possible in an FLSA case when there are no contemporaneous records showing what work was performed. The Court's *Daubert* analysis must be made in that context. *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006). Furthermore, counsel for Applebee's used similar questions to gather information from Appleebee's employees early in the case. While counsel does not purport to be an expert in the field of surveys, his use of similar questions to gather information that is clearly relevant to this case suggests that the approach taken by Plaintiffs is not unreasonable or so inherently unreliable that the questionnaire and Mr. Cutler's testimony about it should be excluded.

8

The Court does not believe that the Federal Judicial Center's Reference Manual on Scientific Evidence is particularly applicable here. If this case involved a patent where a court or a jury is heavily dependent on scientists to understand the data, the Manual would be instructive. Such is not the case with a questionnaire that asks employees about their work history. Moreover, it is clear that post-*Daubert* questionnaires are being used in FLSA disputes and there is no evidence that the guidance in the FJC's Reference Manual cited by Applebee's is controlling in these kinds of cases. *See, Metzler*, 127 F.3d 959,961 (10th Cir. 1997) (The trial court admitted a DOL questionnaire which did not conform to the FJC Manual. The trial court found problems with the questionnaires such as bias and imprecision caused by recreating historical data about distant and unremarkable tasks. Further, out of 23,580 employees that were sent the questionnaire, only 5,743 responses were received, a response rate much lower than the Federal Judicial Center's Reference Manual on Scientific Evidence would recommend. Nonetheless, the trial court relied on the questionnaire to fashion a remedy applicable to all workers.). *Also see*, *Reich v. Monfort, Inc.,* 144 F.3d 1329 (10th Cir. 1998) (6,186 questionnaires sent out and 888 responses were received. Class-wide remedy fashioned on 888 responses). Finally, the Eighth Circuit in *Marvin Lumber and Cedar Company v. PPG Industries, Inc.*, 401 F.3d

9

901, 915 (8th Cir. 2005), found that "[i]t goes without saying that the Manual does not have the force of law, nor are judges required to follow it." *Id.*

Applebee's complaint that the questionnairelacks precision and is not framed to be unbiased clearly goes to the weight of the evidence and not its admissibility. Similarly, the method by which the questionnaire was assembled and administered and Mr. Cutler's lack of expertise in the field of surveys can be explored on cross examination and in closing argument. *See*, *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001).

The Court denies Applebee's Motion as it relates to Mr. Cutler's Opinion One.

### 2. Opinion Number 2

In his Second Opinion Mr. Cutler states:

In my professional opinion and within a reasonable degree of professional certainty, I believe that general preparation and maintenance work is not a tip-producing activity.

Applebee's argues that this opinion is not admissible because Mr. Cutler lacks the expertise to give the opinion and it is nothing more than a legal conclusion. Previously, the Court has held that the question of what is tip producing activity is a fact question for the jury. As of this time, neither party has asked the Court to reconsider this finding or indicated that it was in error. If this is a fact question, then Mr. Cutler is not giving a legal opinion when he identifies what is tip producing activity. As to his credentials, he has

10

worked for many years interpreting and enforcing the FLSA. He has handled cases which involved the tip credit, although never one that required him to interpret or apply the twenty percent rule which is found in the DOL Guidebook. While this is a close question, the Court finds that Mr. Cutler is qualified by his experience to give this opinion. Mr. Cutler's experience with the DOL Guidebook and regulations enables him to explain to the jury how the DOL's regulations and Guidebook are used by Compliance Officers and what should be considered to determine whether something is a tip producing activity. It will be for the jury to determine whether his opinion about tip producing activity is consistent with the DOL's interpretation and whether his opinion makes common sense. Thus, even if this involves a legal issue, the Court finds Mr. Cutler's Opinion 2 admissible. The Court denies Applebee's Motion as it relates to Opinion 2.

### 3. Opinion Number 3

In his Third Opinion Mr. Cutler states:

In my professional opinion and within a reasonable degree of professional certainty, I believe that the following "Section" and "No" fields of the Opt-In Questionnaire were correctly used to identify the opt-in plaintiffs' general preparation and/or maintenance type duties and work-time[.]

Again, Applebee's argues that this is merely a legal opinion which Mr. Cutler is not qualified to make. In this opinion Mr. Cutler is effectively defining for the jury what is general preparation work as that term is used in the DOL Guidebook Section 30d00(e)

11

(Dec. 9, 1988). There is no evidence in the record that Mr. Cutler has experience defining what is general preparation and/or maintenance work. However, having worked for the DOL for many years, it would not be surprising that he was called upon to define how specific tasks should be categorized based on a general statement in a regulation or handbook. In other words, when a regulation specifically identifies some tasks that are labeled general preparation (in this case "cleaning and setting tables, making coffee, and occasionally washing dishes or glasses"), how does a DOL Compliance Officer determine what other tasks should be similarly categorized. The Court assumes a DOL Compliance Officer would have to make these kinds of interpretations on a regular basis. Laws and regulations are normative principles that have to be applied to diverse factual contexts. Rarely does the law or regulation identify on it face every factual context to which it will apply. Given that Mr. Cutler has extensive compliance experience, it is more likely than not that he has made similar deductions. The fact that he has never had to classify these particular tasks does not mean his opinion is unreliable or unhelpful to the jury. The Court denies Applebee's Motion as it relates to Mr. Cutler's Opinion 3.

### 4. Opinion Number 4

In his Fourth Opinion Mr. Cutler states:

In my professional opinion and within a reasonable degree of professional certainty, I believe that opt-in plaintiffs regularly spent, on average, in

12

excess of 20% of their shift time performing general preparation and/or
maintenance work during the case period.

(Cutler Report, pp. 67). Applebee's seeks to exclude this opinion because it is based on the flawed questionnaire and it is dependent on Mr. Cutler's Second and Third Opinions. While the Court has not excluded the questionnaire or Mr. Cutler's Second and Third Opinions, it will not allow his Fourth Opinion. It is not particularly helpful to the jury because Mr. Cutler's conclusion is derived from evidence already before the jury and the inference he makes can be made by the jury without the assistance of an expert. Further, it is sufficiently close to the ultimate issue that the jury must reach, that this expert opinion runs the risk of invading the province of the jury. Applebee's Motion is granted as it relates to Mr. Cutler's Opinion 4.

### 5. Opinion Number 5

In his Fifth Opinion Mr. Cutler states:

In my professional opinion and within a reasonable degree of professional certainty, I believe that it is possible to extrapolate the results of the opt-in questionnaire to the entire class of opt-in plaintiffs.

(Cutler Report, pp. 71-72).

The Court will not permit Mr. Cutler to give this opinion. First, Plaintiffs have not provided sufficient evidence that Mr. Cutler is qualified to give this opinion. There is no evidence that Mr. Cutler has made similar extrapolations in his job as a compliance officer

13

and if he has why that experience is helpful in making this particular extrapolation. The
specifics of this conclusion are so dependent on the facts in this case the Court is not
confident that his general experience at the DOL would permit him to make this
conclusion and Plaintiffs have not persuaded the Court otherwise. In addition, Mr. Cutler
admits that he is not an expert on statistics and there is evidence on the face of the
questionnaire that undermines the expert's opinion. Some of the respondents show that
they did not work more than twenty percent of their time on general preparation and
maintenance. While Mr. Cutler can testify about the use of extrapolation generally at the
DOL and his experiences with extrapolation, it will not permit him to give Opinion 5.
Applebee's Motion is granted as it relates to Opinion 5.

### 6. Expert Opinion Number 6

In his Sixth Opinion Mr. Cutler states:

> In my professional opinion and within a reasonable degree of professional
> certainty, I believe that Applebee's failed to maintain an accurate record of
> hours worked to determine the extent of the amount of general preparation
> and maintenance type work performed by opt-in plaintiffs classified as
> tipped employees, upon which Applebee's ability to take a tip credit for
> hours worked rests.

(Cutler Report, p. 72). The Court will not exclude this opinion in its entirety. The Court
will permit Mr. Cutler to testify about the record keeping requirements of the FLSA and
explain the practical problems that occur when no records are maintained. The Court will

14

also permit him to testify that Applebee's did not maintain a record of hours worked which could now be used to determine the extent of the amount of general preparation and maintenance work performed by opt-in plaintiffs. However, the Court will not permit him to testify to the last clause "upon which Applebee's ability to take a tipped credit for hours worked rests." First, the Court is not certain what that clause means. Second, it could imply that by not keeping records, Applebee's forfeited its right to take a tipped credit which is not the law. Third, it is for the jury to decide whether Applebee's kept the records required by law to take the tipped credit.

### D. Dr. Hagar's Opinions

Applebee's seeks to exclude Dr. Hagar's testimony because all of Dr. Hagar's testimony is allegedly based on Mr. Cutler's inadmissible opinions. Because the Court has not excluded Mr. Cutler's opinion testimony about the questionnaire and because Hagar's opinions are not dependent on opinions which the Court did exclude, the Court denies Applebee's Motion to the extent it relates to Dr. Hagar.

### E. Crain's Opinions

Mr. Crain was retained by the Plaintiffs to determine the amount of wages due to the opt-in plaintiffs. Mr. Crain's testimony references Mr. Cutler's extrapolation opinion which this Court has limited. To the extent Mr. Crain's calculations are dependent only on

15

Mr. Cutler's extrapolation opinion, they are inadmissible. To the extent his calculations are based on the factual record, Applebee's Motion in Limine is denied.

Finally, the Court is unpersuaded by the Plaintiffs' argument that 29 U.S.C. § 218(a)[1] mandates defining "minimum wage" for purposes of FLSA damages calculations as the higher of the state and federal minimum wage rates. 29 U.S.C. § 216(b) states that employers who violate the FLSA are liable to their employees in the amount of their "unpaid minimum wage." Though § 218(a) expressly provides that the FLSA does not preempt higher state minimum wages, it also does not adopt such higher wages as the measure of damages for FLSA violations. *See Bruns v. Municipality of Anchorage*, 182 F.3d 924, No. 97-36060, 1999 WL 288910, at *2 (9th Cir. May 10, 1999) (" 29 U.S.C. § 218(a) simply makes clear that the FLSA does not preempt any existing state law that establishes a higher minimum wage or a shorter workweek than the federal statute. It does not purport to incorporate existing state law") (internal punctuation omitted) (citing *Cosme*

---

[1] In relevant part, § 218 provides:
No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . . No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.
29 U.S.C. § 218(a).

*Nieves v. Deshler*, 786 F.2d 445, 452 (1st Cir.1986)). The cases cited by Plaintiffs as providing damages at state wage rates included claims for violations of state wage statutes; Plaintiffs clarify that they bring no such claims. *See generally Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048(GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007). Plaintiffs provide no basis for using state minimum wage rates in their damages calculations. To the extent that Mr. Crain's damage calculation is based on that premise, it is inadmissible.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendant's Motion to Exclude Expert Testimony in Limine and Pursuant to *Daubert* [Doc. # 233] is DENIED in part and GRANTED in part. The Court grants Defendant's Motion in Limine as it relates to Mr. Cutler's Opinion 4 and Opinion 5 and partially as to Opinion 6; the Court denies Defendant's Motion in Limine as to Dr. Hagar's opinion; the Court denies in part and grants in part Defendant's Motion in Limine as to Mr. Crain's opinion. Mr. Crain's calculation is inadmissible to the extent it is dependent entirely on Mr. Cutler's

17

extrapolation of the questionnaire data to the whole class. It is also inadmissible to the extent the calculation incorporates state minimum wage.

                                                    s/ Nanette K. Laughrey
                                                    NANETTE K. LAUGHREY
                                                    United States District Judge

Dated: August 3, 2009
Jefferson City, Missouri