IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

GERALD A. FAST, TALISHA )
CHESHIRE, and BRADY GEHRLING, )
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　) Case No. 06-4146-CV-C-NKL
　　　v. )
　　　　　　　　　　　　　　　　　)
APPLEBEE'S INTERNATIONAL, INC., )
　　　　　　　　　　　　　　　　　)
　　　　　Defendant. )

**ORDER**

Plaintiffs Gerald A. Fast, Talisha Cheshire, and Brady Gehrling ("Plaintiffs") filed this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. They allege that Defendant Applebee's International, Inc. ("Applebee's"), has failed to pay its servers and bartenders an appropriate wage under the FLSA. Before the Court is Plaintiffs' motion for partial summary judgment [Doc. # 176]. It is DENIED.

**I.　　Background[1]**

Plaintiffs were (or are) servers and bartenders at Applebee's restaurants. Plaintiffs' Complaint alleges that Applebee's is liable under the FLSA for paying them the tipped wage rate for time they spent performing non-tipped work.

---

[1] The following facts are drawn from the supported statements of undisputed facts set forth in the parties' briefs on Plaintiffs' motion for summary judgment, as well as procedural facts appearing in the Court's docket. All facts are considered in the light most favorable to Applebee's, the nonmovant.

Applebee's denies liability and claims that it adopted its compensation and timekeeping practices for servers and bartenders in good faith, in reliance on written administrative regulations, orders, rulings or interpretations of the United States Department of Labor. Thus, Applebee's states it is shielded from any liability on Plaintiffs' claims by the good faith defense found in 29 U.S.C. § 259. [Doc. # 82.]

In its May 3, 2007, summary judgment Order, the Court found that employers may pay the tipped wage rate in certain circumstances:

> FLSA regulations and the [Department of Labor's Field Operations] Handbook indicate that a tipped employee's duties must fall into one of three categories. The first category includes all tip producing duties. An employer may take the tip credit for any employee time that falls within the first category. If an employee's duty is not tip producing, then it must be incidental to one of the employee's tip producing duties (the second category), or it must be a duty that is unrelated to any of the employee's tip producing duties (the third category). *If the duty falls within the second category, then the employer may take the tip credit for the time the employee spent on incidental duties so long as the incidental duties do not exceed 20 percent of the employee's overall duties. If the employee's second category duties exceed 20 percent of the employee's overall duties, then the employer may not take the tip credit for any of the employee's time spent on second category duties.* Finally, an employer may not take the tip credit for any employee time that falls within the third category because third category duties are treated as separate and distinct occupations.

[Doc. # 73 (emphasis added).]

The parties dispute what Applebee's policy was with regard to the amount of time spent by servers and bartenders on non-tip producing duties, as well as the extent to which Applebee's monitored that time and the extent to which it was required to keep records of such time. With regard to Applebee's policy, Applebee's corporate designee testified that it is Applebee's policy that its tipped-wage employees should not spend more than twenty

2

percent of their shifts performing non-tipped work. However, Applebee's does not have a written policy requiring its servers and bartenders to spend less than twenty percent of their time on non-tipped work; nor does it specifically inform its servers and bartenders of the twenty percent tolerance. One document, titled "Best Demonstrated Practices," which was apparently directed to Applebee's restaurant managers, indicates that Applebee's could save on labor costs by having servers and bartenders perform non-tipped work during slow times; but none of the managers deposed in this case had seen the document or implemented such a practice.

As for how much time was actually spent on non-tip producing duties, Plaintiffs claim that they spent more than twenty percent of their time performing such duties, and Applebee's denies this (at least as to the majority of Plaintiffs and opt-in plaintiffs). However, with regard to records of time spent on tipped and non-tipped producing duties, Applebee's did not generate any data which specifically shows the amount of time servers and bartenders spent on tip producing work.

On June 19, 2007, the Court conditionally certified the following class in this case, as suggested by Plaintiffs:

> current and former servers and bartenders at 'corporate' restaurants (i.e. those operated by defendant or its subsidiaries as opposed to franchisees) . . . who were/are directed or permitted to perform duties that would not generate tips such as general maintenance and preparatory work in excess of twenty percent (20%) of their shift without paying them at least minimum wage for such work.

3

[Doc. # 83.] After notice was sent to potential class members, over 5,549 plaintiffs opted in to the action.

Both Plaintiffs and Applebee's retained experts to analyze the amount of time servers and bartenders spent performing non-tipped work. Applebee's retained an expert to study servers and bartenders at thirty of its restaurants, videotaping their activities for three weeks, and recording what duties several randomly-selected servers and bartenders performed over the course of one week. Analyzing this data, Applebee's expert concluded that the servers and bartenders he observed devoted an average of eighteen percent of their time to duties that Plaintiffs would classify as non-tipped work.

The parties do not discuss the findings of Plaintiffs' experts in their statements of fact in the briefing on Plaintiffs' motion for summary judgment. Applebee's does mention the report of one of Plaintiffs' experts in its response brief. That expert report states that its conclusions are based, in part, on responses to a questionnaire sent to opt-in plaintiffs concerning the amount of time they spent on non-tipped work. Approximately 1,610 opt-in plaintiffs responded to that questionnaire, submitting 2,103 responses. The responses indicate that the responding opt-ins spent anywhere from zero percent to (apparently) over one hundred percent of their time on unspecified non-tipped work. From those responses, Plaintiffs' expert determined the average amount of time spent by opt-in plaintiffs on non-tipped work was 43.8%.

**II.     Discussion**

Plaintiffs, on behalf of themselves and all opt-in plaintiffs, move for partial summary judgment on the issues of (a) whether Applebee's paid Plaintiffs and all opt-in plaintiffs properly and (b) whether Applebee's may assert a good faith defense under 29 U.S.C. § 259. Before ruling on this motion, the Court considered the issues, arguments and authorities raised both in the briefs and at oral argument.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the "responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Liability

Plaintiffs seek a ruling that, as a matter of law, Applebee's is liable to the Plaintiffs and the opt-in plaintiffs for unpaid wages because Applebee's has failed to show that it was entitled to take the tip credit for those employees who worked more than twenty percent of their time doing work incidental to tip producing work. Plaintiffs argue that, under the FLSA, the burden is upon Applebee's to prove – by "clear and affirmative evidence" – that it was entitled to pay Plaintiffs and the opt-in plaintiffs the tipped wage. Plaintiffs appear to argue that their only burden is to generally claim that all Plaintiffs and all opt-in plaintiffs spent more than twenty percent of their time on unspecified non-tipped work and that, after they have done so, the burden shifts to Applebee's to disprove that assertion by documentary evidence. According to Plaintiffs, because Applebee's cannot produce documentary records of how much time its servers and bartenders spent on non-tipped work, Applebee's cannot meet its burden.

Applebee's correctly points out that the tip credit is contained in a definitional section of the FLSA and therefore is not an exemption or exception which the employer must prove. *Compare* 29 U.S.C. §§ 207 ("Maximum Hours") *and* 213 ("Exemptions") *with* 29 U.S.C. § 203 ("Definitions"). Instead, the employee must prove that he or she performed work for which he or she has not been paid. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). In *Mount Clemens*, the court stated, "An employee who brings suit . . . for unpaid minimum wages . . . has the burden of proving that he performed work for which he

was not properly compensated." *Id.* at 986-87. The *Mount Clemens* court also found that employers are charged with keeping records demonstrating that employees have been properly compensated, and that employees should not be penalized for failing to produce convincing substitutes for such records where employers fail to keep them. *Id.* at 687. Therefore, the *Mount Clemens* court held, "In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

To prevail on their FLSA claims, Plaintiffs have the burden of proving that they performed work for which they have not been compensated. Because there remain disputed issues of fact concerning this issue, summary judgment is not appropriate.

**B.     Good Faith Defense under 29 U.S.C. § 259**

Next, Plaintiffs argue that, as a matter of law, Applebee's is not entitled to the good faith defense provided by 29 U.S.C. § 259. Section 259 provides immunity from liability in FLSA cases where an employer pleads and proves:

> that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [United States Department of Labor] . . . .

29 U.S.C. § 259(a) and (b)(1); *Hultgren v. County of Lancaster, Neb.*, 913 F.2d 498, 507 (8th Cir. 1990). "This defense is essentially an estoppel defense to protect employers from an agency's mistakes in statutory interpretation." *Hultgren*, 913 F.2d at 507. A § 259 defense

7

requires an objective test where an employer must prove the following: (1) its compensation policies were adopted in reliance on a written interpretation of the FLSA by the Department of Labor, (2) the policies were in conformity with that interpretation; and (2) its actions were objectively reasonable. *See Hultgren*, 913 F.2d at 507 (stating that the interpretations on which the defense is based must be both written and "specific enough to provide guidance").

Plaintiffs argue that Applebee's is not entitled to the § 259 defense because the evidence shows that Applebee's did not rely on or conform with FLSA requirements. Plaintiffs point to the Handbook, cited in the Court's May 3, 2007, Order. The Handbook indicates that employees who spend more than twenty percent of their time performing non-tipped work cannot be paid the tipped wage – and must be paid at least the minimum wage – for such work. Plaintiffs take the position that Applebee's cannot claim the good faith defense unless it relied on and conformed with the twenty percent tolerance laid out in the Handbook.

Further, Plaintiffs state that Applebee's inaction with regard to the Handbook requirements demonstrates that it was not acting in good faith. Plaintiffs argue that Applebee's does not train its managers to assure that servers and bartenders spend no more than twenty percent of their time on non-tipped work, or have written rules or training concerning limits on non-tipped work. Applebee's does not monitor employee time spent in such work. Plaintiffs point to one document, titled "Best Demonstrated Practices," which appears to encourage its restaurants to save labor costs by having its servers and bartenders

8

perform non-tipped work. Plaintiffs emphasize letters sent by Applebee's to the Department of Labor promising that Applebee's would assure that employees were properly monitored and compensated according to the twenty percent Handbook directive, and argue that Applebee's broke this promise.

In response, Applebee's argues evidence indicating that it did rely on and conform with Department of Labor interpretations regarding payment for non-tipped work in good faith. Applebee's notes that there is no statutory guidance demonstrating the specific duties for which employees may be paid the tipped wage, as opposed to minimum wage. Applebee's argues that 29 C.F.R. § 516.56(e) indicates that it was not obligated to pay its employees minimum wage for non-tipped work so long as the work they performed was within the "occupation" of a server or bartender. *See id.* (stating that waitresses may spend part of their time cleaning and setting tables, toasting bread, making coffee and washing dishes). Applebee's also cites a 1980 Department of Labor opinion letter, which gives the same indication. *See generally, Hultgren*, 913 F. 2d at 507 (stating that opinion letters from the Department of Labor "may properly be characterized as the position of the agency for purposes of section 259"). Applebee's argues that, read in light of a 1985 opinion letter, the Handbook's twenty percent tolerance relates only to work performed beyond their restaurants' general operating hours. Finally, Applebee's states that the Court's ruling setting forth the twenty percent tolerance for non-tipped work was the first of its kind. Applebee's indicates that this evidence could support a finding that it relied on and acted in compliance with

9

Department of Labor regulations and opinion letters and therefore summary judgment on its good faith defense is not appropriate.

There is also evidence that it is Applebee's policy that tipped-wage employees do not spend over twenty percent of their time on non-tipped work. Applebee's produced evidence indicating that the "Best Demonstrated Practices" document does not reflect its policies as argued by Plaintiffs, was not used in its restaurants, and is not inherently improper under Department of Labor interpretations. Viewing the facts in the light most favorable to Applebee's, it has produced some evidence that it does not have a policy to violate the twenty percent rule.

Drawing all inferences in favor of Applebee's, the Court cannot find as a matter of law that Applebee's is not entitled to the § 259 defense. There remain questions of fact concerning whether Applebee's actions were in good faith. *See Bouchard v. Regional Governing Bd. of Region V Mental Retardation Servs.*, 939 F.2d 1323 (8th Cir. 1991) (considering particular facts and circumstances of employees' work situations in determining whether their employer was entitled to a good faith defense). The Court cannot find, as a matter of law, that Applebee's is not entitled to the protection of § 259.

## III. Conclusion

Accordingly, it is hereby ORDERED that Plaintiff's motion for summary judgment [Doc. # 176] is DENIED.

10

s/ Nanette K. Laughrey
                                                    NANETTE K. LAUGHREY
                                                    United States District Judge

Dated: August 4, 2009
Jefferson City, Missouri

11

Case 2:06-cv-04146-NKL   Document 252   Filed 08/04/09   Page 11 of 11