IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| GERALD A. FAST, TALISHA CHESHIRE, and BRADY GEHRLING, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 06-4146-CV-C-NKL |
| v. | ) ) | |
| APPLEBEE'S INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) | |

**ORDER**

Plaintiffs are current and former servers and bartenders at Applebee's restaurants. They claim that Applebee's violated the Fair Labor Standards Act ("FLSA") by paying less than the minimum wage for their work. To understand the gravaman of Plaintiffs' complaint requires an understanding of how the FLSA permits an employer to calculate the wages of a "tipped employee."

The FLSA generally requires employers to pay a minimum wage of $7.25 per hour. "Every employer shall pay to each of his employees who in any work week is engaged in commerce . . . not less than . . . [$7.25 per hour]." 29 U.S.C § 206(A)(1)(c). Employees working in a "tipped occupation" are required to receive at least that minimum wage; however, their employers are permitted to pay a direct wage of $2.13 per

hour, 29 U.S.C. § 203(m),[1] and then take a "tip credit" to meet the $7.25 per hour minimum wage requirement. A tip credit is the amount of the employee's tips that the employer can use to make up the difference between $2.13 per hour and the $7.25 minimum wage. So long as the tips received by the employee make up the difference between the tipped wage rate of $2.13 per hour and the full minimum wage rate of $7.25 per hour, an employer has satisfied the FLSA. The tip credit is found in a definitional section of the FLSA and states in relevant part:

> (m) In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206 (a)(1) of this title.

The tip credit only applies to "tipped employees." A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

If an employee is engaged in both a tipped occupation and a non-tipped occupation, then the tip credit can only be taken for the time worked in the tipped occupation. An employer is specifically directed by the Department of Labor to keep

---

[1] 29 U.S.C. § 203(m) sets the tipped wage at one half the minimum wage on August 20, 1996. On that date the minimum wage was $4.25 per hour; one half of that wage was $2.13 per hour.

separate records for tipped and non-tipped occupations.

> (a) With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing . . . . :
>
> > (4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.
> >
> > (5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

29 C.F.R. § 516.28.

The Department of Labor has adopted a regulation to deal with employees who work in dual occupations. It provides that:

> (b) Dual Jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least [$30] a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning, and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R § 531.56(e). Thus, according to the regulation, just because an employee is not doing work that directly produces tips does not mean that a tip credit cannot be taken. So long as a tipped employee is doing related work *in his or her tipped occupation*, a tip

3

credit is permitted.

The Department of Labor, however, has also developed guidelines for determining how much non-tipped work can be assigned to the employee before the employee effectively has moved into a non-tipped occupation and becomes a dual employee. Section 30d00(e) of the Department of Labor's Field Operations Handbook states:

> (e) Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting table, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

So the Handbook indicates that employees who spend more than twenty percent of their time on general preparation and maintenance work cannot be considered tipped employees at least for the amount of time doing general preparation and maintenance.

Plaintiffs contend that Applebee's routinely assigned its servers and bartenders substantial general preparation and maintenance work. According to Plaintiffs, they regularly spent more than twenty percent of their time on general preparation and maintenance. For example, there is evidence that Applebee's required its servers and bartenders to clean and set up the restaurant before it was opened and after it was closed. It required servers to clean bathrooms during their shifts, to sweep the restaurant, to clean

4

and stock service areas, roll silverware, and to do other duties not directed to specific customers. Applebee's took a tip credit for all work performed by its servers and bartenders, including this general preparation and maintenance work even when it amounted to more than twenty percent of the employee's work. Plaintiffs contend that this is a violation of the FLSA and that Applebee's was not entitled to take the tip credit under these circumstances and, therefore, owes additional wages to the Plaintiffs.

Applebee's contends that it has not violated the FLSA. It claims that all work done by its servers and bartenders was part of their tipped occupation because anything that contributes to their customer's enjoyment is related to the occupation of server or bartender. Alternatively, Applebee's has argued that the tip credit is permitted even when a server or bartender works outside his or her occupation, so long as the work outside the tipped occupation does not exceed twenty percent of the employee's time. Applebee's has also suggested that the Department of Labor's dual occupation regulation only applies when the employee clocks in as a janitor instead of as a server or bartender. Therefore, unless the server actually clocks in as a janitor when they clean the restrooms, the employee would still be in the occupation of a server. Applebee's primary argument, however, is that the twenty percent rule contained in the Department of Labor's Handbook is contrary to the terms of the FLSA. Applebee's argues that the FLSA focuses not on the duties performed by the employee but rather on the occupation of the employee. According to Applebee's, once a server or bartender is classified as a server or bartender, they are only paid the tipped wage and a tip credit can be taken for all work

5

performed, regardless of the duties assigned.

In an earlier order [Doc. 73], the Court determined that the Plaintiffs' interpretation of the FLSA was correct. It also determined that Applebee's was not entitled to summary judgment because there was evidence from which a reasonable fact finder[2] could conclude that Applebee's had violated the FLSA by taking a tip credit when its servers and bartenders spent more than twenty percent of their time on general preparation and maintenance.

While preparing for trial, both the parties and the Court concluded that an interlocutory appeal on the proper standard for applying the tip credit to Applebee's servers and bartenders, as well as the allocation of the burden of proof, would materially advance the ultimate termination of the litigation. Therefore, the Court permitted the parties to submit additional briefing on these subjects.[3]

Having now considered the additional briefing submitted by the parties, the Court affirms its conclusion that Applebee's is not entitled to summary judgment on Plaintiffs' FLSA claim. The Court finds the Department of Labor's Regulation 531.56(e) and the Department of Labor's Handbook section 30d00(e), draw a persuasive line between when

---

[2] The parties have waived their right to a jury trial and, therefore, this case will be tried to the Court.

[3] The parties also addressed whether the definition of the occupation of a server or bartender was a question of law or fact. Both parties agreed that it was a question of law. Therefore, it is for the Court to decide what duties comprise the occupation of a server or bartender. What duties were actually performed by class members is a question of fact. *See, e.g., Wirtz v. Tyson's Poultry, Inc.*, 355 F.2D 255 (8th Cir. 1966).

a tipped employee is engaged in a tipped occupation and when the employee is no longer working in that occupation. The Court also reaffirms its conclusion that the Plaintiffs have the burden of proof to show that class members performed work for which they have not been properly compensated and must present "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946). If Applebee's has failed to maintain records to show the amount of time Plaintiffs spent on specific duties, the burden of proof shifts to Applebee's to show that Plaintiffs' calculation is unreasonable. *Id.*

I. Discussion

   A. Tip Credit

The question before the Court is how to define the occupation of server and bartender for purposes of calculating the tip credit under the FLSA. As always, the starting point is the language of Congress.

Congress has stated that employees engaged in commerce shall be paid a minimum wage of $7.25 per hour. As for "tipped employees" further guidance is provided by Congress in 29 U.S.C. § 203(m). That section permits the employer to use the employee's tips to satisfy part of the employer's minimum wage obligation. Congress defines a "tipped employee" as one who engages "in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). The parties all agree that bartending and serving are tipped occupations. However, the parties disagree on what duties are properly assigned to the occupation of bartender and

server. The FLSA does not specifically define the term "occupation."

Having considered the language, context and history of the FLSA, the Court concludes that Congress intended for the tip credit to be taken when employees are primarily engaged in tip producing duties. There would be no reason for Congress to carve out a special rule for tip producing occupations if an employee was not regularly in a position to generate tips. If Congress had only intended to say that tips could be used to satisfy the minimum wage, it would have said simply that. Instead, Congress said that the employee's work must be within the "tipped occupation." Thus, Congress must have assumed that the tip credit would be applicable when an employee was doing primarily tip producing work. The history of the FLSA also supports that conclusion.

Originally, the FLSA did not address tips, and employers often required employees to surrender tips to their employers. *The Fair Labor Standards Act* § 9.VII.A at 549 (Ellen C. Kearns, et al. eds. 1999) (citing *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942) (allowing red caps' employer to keep tips and use them to meet minimum wage requirements)). In 1966, the FLSA was amended to allow employers to elect whether (a) to take credit for tips received and kept by a "tipped employee" by up to fifty percent of the minimum wage, or (b) to require employees to relinquish tips and be paid the full minimum wage (known as the "hourly wage method"). *Id.* at 550. In 1974, the FLSA was again amended "to make it clear that 'an employer could not use the tips of a tipped employee to satisfy more than 50 percent of the [FLSA's] . . . minimum wage and to ensure that" employees retained all tips, except where there were tip pooling

arrangements. *Id.* at 551 (citation and internal quotation marks omitted). This movement toward allowing employees to retain tips – and away from allowing employers to merely pay the straight minimum wage using the employee's tips – indicates Congress' intent that employees be in a position to potentially earn higher than minimum wage by being in a tipped occupation while permitting employers to use tips from that tipped occupation to make up part of the minimum wage.

The Court, as well as the Department of Labor, however, has recognized that defining an occupation at its margins is difficult, and it is also difficult to say what is and is not tip producing work. It would not be practical for an employer to keep track each time a server clears and wipes a table or pushes down a toaster or makes coffee either as assigned or because the cook was too busy and the customer needed a cup of coffee. Thus, the Department of Labor in 29 C.F.R. § 531.56(e) says that "related duties *in an occupation* that is a tipped occupation need not by themselves be directed toward producing tips."[4] The regulation gives an example of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes and glasses. This suggests that as long as the waitress is doing work generally assigned to waitresses, the tip credit can be taken even if there is not a direct link between the work and the tips. However, "where the facts indicate . . . that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general

---

[4]The Department of Labor here refers to related duties in an occupation. It does not say duties related to the occupation.

preparation work or maintenance, no tip credit may be taken for the time spent in such duties." Field Operations Handbook § 30d00(e). "Because [the Department of Labor] . . . is the primary federal authority entrusted with determining the FLSA's scope, [the Handbook] 'while not controlling upon the courts by reason of [its] authority, [does] constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance.'" *Reich v. Miss Paula's Day Care Center, Inc.*, 37 F.3d 1191, 1194 (6th Cir. 1994) (citing *Mabee v. White Plains Publishing Co.*, 327 U.S. 178, 182 (1946); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 371 (8th Cir. 1974); *Morgan v. Family Dollar Stores, Inc.*, 551, F.3d 1233, 1275 (11th Cir. 2008) (noting that the Handbook is persuasive, though not entitled to *Chevron* deference).[5]

The Department of Labor's twenty percent cushion ensures that employers will not lose the tip credit until they assign substantial work that is not tip producing; i.e., general preparation and maintenance instead of work directed to specific customers, the source of all tips. Having already opined that the tip credit could be taken for work before and after a restaurant is open, *see* Dep't of Labor, Wage & Hour Div., Op. Letter WH-502, 1980

---

[5] A twenty percent buffer is commonly used by the Department of Labor to give firm guidance to employers by quantifying what is perceived by the Department to be substantial. *See* 29 C.F.R. § 783.37 (stating that employees may be considered seamen so long as they spend less than twenty percent of their time on nonseaman's work); 29 C.F.R. § 553.212 (stating that employees may be subject to firefighter and law enforcement exemptions so long as no more than twenty percent of their time is spent on nonexempt work); 29 C.F.R. § 552.6 (stating that employees may be considered to be providing companionship services so long as they spend less than twenty percent of their time on general household work).

WL 141336 (March 28, 1980) (stating that cleaning work done after hours in a dining area was subject to tip credit), the Department of Labor recognized that a reasonable limit had to be placed on the amount of work that could be assigned that was not customer specific. Otherwise, an employer could effectively use servers and bartenders as janitors and cooks both during and outside business hours when no customers were present.

In its 1985 opinion letter (Dep't of Labor, Wage & Hour Div., Op. Letter FLSA-854 (Dec. 20, 1985)), the Department of Labor raised this very concern when it stated that the tip credit could be taken for "preparation work or after hours clean up if such duties are incidental to the waiter or waitress's regular duties and are assigned generally to the waiter/waitress staff. However, where the facts indicate that specific employees are routinely assigned to maintenance work or that tipped employees spend a substantial amount of time performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities." (Emphasis added.) By 1988, the Department of Labor's Handbook contained the twenty percent rule which defined when general preparation or maintenance work had become substantial.[6]

In contrast, Applebee's theory stretches the FLSA's tipped wage provision, the regulations, and the Handbook so far that they become meaningless. Under Applebee's

---

[6] The Department of Labor also submitted an opinion letter on January 16, 2009, which appears to have been triggered by this litigation. (Dep't of Labor, Wage & Hour Div., Op. Letter FLSA2009-023 (Jan. 16, 2009) (Published and simultaneously withdrawn, March 2, 2009), *available at* http://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_24_FLSA.htm (Last accessed March 2, 2010)). That opinion letter was withdrawn on March 2, 2009, and the Department of Labor stated it cannot be relied on as a statement of agency policy.

reading of the FLSA, it can have its servers and bartenders perform an unlimited amount of non-tipped duties while Applebee's pays them the tipped wage, so long as those non-tipped duties are related in some amorphous or ever changing way to the occupation of servers or bartenders. For example, Applebee's has consistently claimed that cleaning bathrooms is related to the occupation of servers and bartenders.[7]

Though Applebee's argues that the Department of Labor's twenty percent limitation on general preparation and maintenance is impossible to enforce, Department of Labor guidance indicates that employers are capable of monitoring the work performed by their tipped employees. The regulations corresponding to § 203(m) anticipate that employers will separately track time spent by tipped employees on work within particular occupations – suggesting that the Department of Labor believes such tracking is possible. *See* 29 C.F.R. § 516.28.

Applebee's own history with FLSA enforcement in this case indicates that it is capable of enforcing the twenty percent limitation. It is undisputed that, in 2005, the Department of Labor charged several Applebee's restaurants with failing to comply with the Handbook's twenty percent limitation. Applebee's agreed to audit other locations to

---

[7] While it is true that § 30d00(e) of the Department of Labor's Field Operations Handbook discusses "duties related to the tipped occupation" in contrast to 29 C.F.R. § 531.56(e) which refers to "related duties in an occupation," the Court concludes this is a matter of semantics and not substance. It is clear that the Handbook is discussing § 531.56(e) and is using the same examples of the Regulation. So the difference in language was not intended to expand the application of the tip credit. There is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled even if both the bathroom and the food promote a customer's enjoyment of the restaurant.

12

assure that this noncompliance was not systemic. Applebee's has emphasized that, in response to the investigation, it stopped paying the tipped wage to employees who were performing the non-tipped duties questioned by the Department of Labor (salad portioning and dishwashing). [*See* Doc. # 235 at 10.] Applebee's human resources representative testified that Applebee's understood that it was subject to the twenty percent limitation in the Handbook. Recently, Applebee's argued that the twenty percent limitation could be applied to situations where tipped employees perform work unrelated to their tipped occupation, such as a server performing purely janitorial duties like cleaning bathrooms. This argument and Applebee's response to the Department of Labor's investigation indicate that it is capable of assigning the work of its employees in order to either comply with the twenty percent limitation or pay its workers at the minimum wage for time spent on general preparation and maintenance.[8]

Applebee's relies on *Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), for the proposition that the Department of Labor's twenty percent limitation is unworkable. It is true that the *Pellon* court commented that the Department of Labor's twenty percent rule was infeasible; however, that finding is inconsistent with

---

[8] In fact, an employer is responsible to keep track of work assigned as well as work actually done by its employees. See 29 C.F.R. § 785.13:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13 and 29 C.F.R. § 516.18, which require the employer to exercise control over work performed by an employee and to keep records of work done in tipped and non-tipped occupations. Both regulations are subject to *Chevron* deference. Further, the *Pellon* court ultimately found that the sky caps in question had not presented sufficient evidence to satisfy the twenty percent rule even if it were applied. Here, Plaintiffs have presented evidence from which a reasonable fact finder could conclude that Plaintiffs spent more than twenty percent of their time on general preparation and maintenance. *Pellon* is, therefore, factually distinguishable.

The Court finds the Handbook's twenty percent limitation persuasive and practical. The Department of Labor is charged with enforcing the FLSA on the ground level, and has expertise in the field that the Court lacks. In an area where reasonable minds may disagree about the meaning of the relevant statute and regulations, adopting the Department of Labor's position on this issue provides notice, continuity, and certainty throughout the industry. The twenty percent limitation allows employers some cushion in assigning and tracking non-tipped work while still assuring application of the tip credit only to employees who primarily perform customer specific duties. This approach also complies with the intent of Congress when it carved out a special rule for "tipped occupations." A more restrictive interpretation of "waitress" could be argued; *i.e.*, the occupation of a waitress only involves serving food and drinks, handing out menus, taking orders, presenting a bill and setting and cleaning their individual customer's tables. However, given the difficulty of defining an occupation at its margins, the Department of

14

Labor's more generous standard is entitled to deference. Employees may be paid the tipped wage rate for performing general preparation and maintenance duties, so long as those duties consume no more than twenty percent of the employees' working time.

### B. Burden of Proof

As the Court has previously ruled, Plaintiffs have the burden of proving that they performed work for which they have not been properly compensated. [*See* Doc. # 252 at 6-7.] Plaintiffs argue that their only burden on their tipped wage claim is to establish that Applebee's "took the tip credit for the opt-in Plaintiffs for at least one work week during the relevant period." [Doc. # 301 at 15.] They argue that they need only show that Applebee's paid them the tipped wage for "an amount of time" – *i.e.,* that at some point they were paid $2.13 per hour rather than the minimum wage of $7.25 per hour. Plaintiffs contend that the burden then shifts to Applebee's to affirmatively show that it properly paid them the tipped wage. *Id.*

Placing the entire burden of proof on Applebee's in this case would be consistent with authority that says that the burden of proof is on employers to show that they are entitled to take the tip credit. *See generally Ash v. Sambodromo,* LLC, No. 09-20406-CIV, 2009 WL 3856367, at *6 (S.D. Fla. Nov. 17, 2009) ("Unless the employer satisfies its burden of showing the applicability of the tip credit, the employee is entitled to the full minimum wage for every hour worked.") (citation and internal punctuation omitted); *Bernal v. Vankar Enterp., Inc.*, 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008) (stating that employers bear the burden of proving that they are entitled to take tip credits);

Department of Labor Handbook § 30d00b ("Since [29 U.S.C. § 203(m)] is not an exemption from the [minimum wage], but merely allows the employer to claim up to 40 percent of the [minimum wage] as tip credit, the employer is responsible for ascertaining that the [minimum wage] provisions are complied with in compensating 'tipped employees.'").

Though "there is not and cannot be any one general" test for allocating burden of proof, 9 Wigmore, Evidence § 2486 (Chadbourn Rev. 1981), placing the burden of proof on Applebee's in this case would be consistent with the "doctrine that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." *United States v. Dixon*, 548 U.S. 1, 9 (2006) (considering the burden of proof for a duress defense under criminal law) (citing 2 J. Strong, McCormick on Evidence § 337, p. 415 (5th ed. 1999)) (original punctuation omitted); *see also* 9 Wigmore, Evidence § 2486 (Chadbourn Rev. 1981) (stating that, among the tests for allocating burden of proof is the notion that, in certain cases, "the burden is upon the party who presumably has peculiar means of knowledge"). The FLSA requires employers to maintain employee payroll and scheduling records. *See* 29 C.F.R. § 516.28. In FLSA collective actions which depend for proof on those records – including records of tipped wage payments – the peculiar means of knowledge rests with employers. Placing the burden of proof on employers who seek to be excused from paying the standard minimum wage also corresponds with the common law rule that "all circumstances of justification, excuse or alleviation rest[] on the defendant." *See Dixon*,

548 U.S. at 9. (discussing burden of proof as to affirmative defenses). *Cf.* Wigmore, Evidence § 2486 (Chadbourn Rev. 1986) (stating other tests for allocating the burden of proof such as "the burden is upon the party having in form the affirmative allegation" and "the burden is upon the party to whose case the fact is essential"); *see generally* 2 J. Strong, McCormick on Evidence § 337, pp. 411-412 (5th ed.1999) ("[L]ooking for the burden of pleading is not a foolproof guide to the allocation of the burdens of proof. The ... burdens do not invariably follow the pleadings.") (cited in *Alaska Dep't of Environmental Conservation v. E.P.A.*, 540 U.S. 461, 494 n. 17) (considering the burden in an EPA case)).

Nevertheless, the Court has not located a single case in which a court actually required an employer to prove the number of hours for which an employee was properly paid the tipped wage. Instead, courts interpreting FLSA claims such as Plaintiffs' routinely allocate the burden of proof under the method suggested by *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946), superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005). Under *Mount Clemens*, "[a]n employee who brings suit ... for unpaid minimum wages ... has the burden of proving that he performed work for which he was not properly compensated." *Id.* at 686-87. The *Mount Clemens* court recognized that employers are charged with keeping records showing that employees have been properly paid, and found that employees should not be penalized for failing to produce convincing substitutes for those records where employers fail to keep them. *Id.* at 687. Therefore, "[i]n such a situation ... an employee has carried

17

out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

The tension between the way burdens are traditionally allocated and the way courts have been allocating the burden of proof in FLSA cases is perhaps best displayed in *Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999). There, the court acknowledged:

> Because Congress designed the FLSA to remedy disparities in bargaining power favorable to employers, the courts narrowly construe the provisions of that statutory scheme, including its exemptions, in the employee's favor. Accordingly, an employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption.

*Id.* at 549 n.4 (citations omitted) (considering whether salad preparers were properly paid at the tipped wage rate and included in a tip pool). But the *Copper Cellar* court then went on to apply the analysis set out in *Mount Clemens*, requiring the employees to prove "by a preponderance of evidence that [they] 'performed work for which [they were] not properly compensated.'" *Id.* at 551 (quoting *Mount Clemens*, 328 U.S. at 686-87)). The *Copper Cellar* court found that the employees there failed to meet the burden of proving damages when they introduced payroll records showing the total number of hours worked that were subject to the tip credit calculation. *Id.* at 552-53. The *Copper Cellar* court affirmed the lower court's finding that this was insufficient. *Id.* at 553. *See also, e.g., Bernal*, 579 F. Supp. 2d at 808 (W.D. Tex. 2008) (stating that employers bear the burden of proving that they are entitled to take tip credits but then relying on evidence of

18

underpayment presented by the plaintiffs before considering whether the defendants had rebutted that evidence).

The United States Court of Appeals for the Eighth Circuit has indicated that it would apply a similar *Mount Clemens* approach to Plaintiffs' claims. In *Murray v. Stuckey's Inc.*, 939 F.2d 614, 620-21 (8th Cir. 1991), the court considered whether employees worked unpaid overtime hours without overtime pay because their managers pressured the employees into falsifying their time records. *Id.* at 621. The Eighth Circuit held that the employees had the burden to "present a prima facie case as to the unpaid overtime hours before the burden of proof shifts to the defendant." *Id.* (citing *Mount Clemens*, 66 S. Ct. 1187, 1192 (1946)).

Under this precedent, the Court believes that Plaintiffs must do more than show they were paid at the tipped wage rate of $2.13 per hour. Plaintiffs do not contend that Applebee's was never entitled to pay them at the tipped wage rate, such that every hour they worked was underpaid. Before the burden shifts to Applebee's, Plaintiffs must make a prima facie showing which hours were not properly paid "as a matter of just and reasonable inference." *See Mount Clemens*, 328 U.S. at 687. Then, if there are no records as to the precise amount of time Plaintiffs spent on specific duties, the burden of proof will shift to Applebee's to show that Plaintiffs' calculation is not reasonable.

1. **Conclusion**

Accordingly, it is hereby ORDERED that Applebee's motion for summary judgment [Doc. # 29] is denied with regard to Plaintiffs' tipped work claim; this Order

supplements the Court's earlier ruling [Doc. # 252] on Plaintiffs' motion for summary judgment.

This Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 29 U.S.C. §1292(b).[9] This case is stayed in the District Court pending the parties' interlocutory appeal to the Eighth Circuit Court of Appeals.

        s/ Nanette K. Laughrey
        NANETTE K. LAUGHREY
        United States District Judge

Dated: March 4, 2010
Jefferson City, Missouri

---

[9] 28 U.S.C. § 1292(b) provides:
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Id.*